IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JERICHO SYSTEMS CORPORATION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | **3:14-CV-2281-K** |
| **AXIOMATICS, INC. and** | § | |
| **AXIOMATICS AB,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the *Defendants' Motion for Judgment on the Pleadings of Invalidity Under 35 U.S.C. §101 and Brief in Support of Same* (the "Motion"). After review of the Motion, the Plaintiff's response to the Motion, the Defendants' reply the Court is of the opinion that the Motion should be GRANTED.

## I.   Background

### A.   Procedural

Plaintiff, Jericho Systems Corporation ("Jericho") alleges, in *Plaintiff's Amended Complaint*, that Defendants, Axiomatics, Inc. and Axiomatics AB   (collectively "Axiomatics") have infringed upon a patent owned by Jericho. In *Defendants Axiomatics, Inc. and Axiomatics AB's Answer, Affirmative Defenses, and Counterclaims to Plaintiff's Amended Complaint* Axiomatics asserts invalidity of the patent in suit as a defense and counter claims for a declaratory judgment on the invalidity of the patent in suit. Axiomatics

subsequently filed the current Motion before the Court, in which Axiomatics asserts that the patent in suit is invalid because it attempts to patent subject matter that is not patentable under 35 U.S.C. §101.

### B.      The Patent in Suit: The '836 Patent

The '836 patent, entitled "Method and System for Dynamically Implementing An Enterprise Resource Policy" was issued by the USPTO on October 15, 2013. It was assigned to Jericho, who is the sole owner of the entire right, title, and interest in the '836 Patent.

The '836 Patent discloses an invention used to make a decision regarding a particular person's authority to access certain information. The invention does this by determining what type of information is needed to make an access decision, obtaining that information, and the applying that information to a rule regarding access to the information. If the information satisfies the rule, then the person is allowed access. If not then the person is denied access.

The patent asserts that this is a significant improvement over the prior art, which used access lists to determine authorization. Under the prior art, a system would check that the person requesting access was on the list to determine if the person was authorized to obtain the information. The patent asserts that the invention significantly improves upon the prior art because under the invention one is no longer required to maintain and update a list, the process is faster because it does not have to

search a list that could contain thousands of names, and the system allows for real time modification of authorizations that the prior art did not provide for.

## II.   Applicable Law

### A.   Subject Matter Eligibility Under 35 U.S.C. §101

A motion for judgment on the pleadings under Rule 12(c) should be granted if the complaint lacks a cognizable legal theory. *Doe v. My Space, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). Patent subject matter eligibility under 35 U.S.C. 101 is a question of law suitable for resolution at the pleading stage of patent litigation matter. *Content Extraction and Transmission LLC v. Wells Fargo Bank, NA*, --- F.3d ----, 2014 WL 7272219 (Fed. Cir. Dec. 23, 2014).

35 U.S.C. §101 provides that "whoever invents of discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. §101. This section defines the subject matter of inventions that an inventor may obtain a patent for. But, claims that attempt to purely cover laws of nature, natural phenomenon, and abstract ideas are not eligible for patent protection because these are implicitly excepted from 35 U.S.C § 101. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S.Ct. 2347, 2354 (2014); *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972); *Ultramercial, Inc., v. Hulu, LLC*, 772 F.3d 709, 711-715 (Fed. Cir. 2014). These judicial exceptions are not patent eligible subject matter because they are the

basic tools of invention and innovation that are free for all to use. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010).

In order to determine if a claim recites patent eligible subject matter, the claim must be analyzed under a two part test. *Alice*, 134 S.Ct. at 2354. Under the first part of this test, one must make a determination if the claim is directed to or recites a judicial exception. *Id*. If no judicial exception is presented in a claim, then the subject matter of the claim is not barred from patent protection and the second part of the test does not apply. *Id*. But, if a judicial exception is presented in the claim, then the claim must be further analyzed under the second part of the test. *Id*. Under the second part of the test the claim is analyzed to determine if the claim recites something more than the judicial exception. *Id*. This part of the test looks for an inventive concept in the claim beyond the judicial exception. *Id*. If there is an inventive concept present in the claim, then the claim recites patentable subject matter. *Id*. If there is not something more or an inventive concept then the claim does not recite patentable subject matter because it is an attempt to patent the judicial exception itself. *Id*. In addition, implementing a judicial exception using well known components or function, limiting the idea to a particular field of use, or adding extra solution activity to the claim are not inventive concepts that add something more to a judicial exception. *Id*. The principles apply equally to method, system, and other claims. *Id*.

## III.    Analysis Of The '836 Patent

### A.     Defendants' Argument

Defendants assert that the claims of the patent in suit are invalid because they are directed to a pure abstract idea without any inventive concept. Under Defendants' analysis of the claims, the claims involve 1) receiving a request for access to a resource, 2) consulting a rule that indicates the conditions for granting access, 3) determining what information about the user is necessary to evaluate the rule, 4) retrieving the information about the user, 5) evaluating the rule using that information, and 6) making an authorization decision.

Defendants assert that this process is nothing more than an abstract idea and equate the process to activities like verifying the age of a person to ensure that a person is old enough to purchase a ticket to an R rated movie.

Defendants also assert that the claims do not include any inventive concept that makes the abstract idea patentable because the recitation of generic computing components in the claims and the limitations of the dependent claims do not add any inventive concept to the claims. Defendants also assert that the claims fail to pass the machine or transformation test.

### B.     Plaintiff's Argument

Plaintiff argues that the claims are not invalid because they are not directed to an abstract idea and even if they were the claims are still not invalid because they include inventive concepts beyond any abstract idea present in the claims. Plaintiff argues that

the claims are not abstract ideas because the claims are rooted in modern computer and internet technology. That is that modern computer and internet technology has uniquely created a problem that is solved by the invention of the claims. Plaintiff further asserts that even if the claims recite an abstract idea, the claims still pass the second part of the *Mayo* test because they include inventive concepts beyond the mere abstract idea. Plaintiff assets that the invention resulted in a dramatic improvement in computer access control systems including eliminating inefficiency, allowing remote data retrieval, and allowing real time determinations to be made. Plaintiff asserts that these improvements show that the claims involve an inventive concept beyond an abstract idea. And, Plaintiff asserts that the claims easily pass the machine or transformation test.

### C.    The Court's Analysis

The Court agrees with Axiomatics that the claims of the '836 Patent are invalid because they are directed to an abstract idea without any additional inventive concept, which is subject matter that is not eligible for patent protection.

The Court initially notes that a court may select a representative claim for analysis and apply that analysis to other claims that are sufficiently similar to the representative claim. *See e.g. Alice*, 134 S. Ct. at 2359-60. In this case, the Court finds that this is the correct approach to this analysis because all of the claims of the '836 Patent are sufficiently similar. The '836 Patent contains three independent claims and

twenty-one dependent claims. Independent Claim 1 reads as follows:

"1. A method to process authenticated user requests to access resources, the method comprising:

receiving from a user a request to perform an action on a resource;

receiving, by a server, a rule associated with the action, wherein the server comprises a processor and operatively associated memory, and wherein the rule indicates conditions under which a request to perform the action on the resource should be granted;

determining a plurality of attributes required to evaluate the rule;

classifying at least a portion of the plurality of attributes by connector, wherein each connector is in communication with an associated remote data source comprising values for attributes classified with the connector;

for a first portion of the plurality of attributes classified with a first connector:

for each of the first portion of the plurality of attributes, determining whether an attribute value for the attribute is present at the server;

generating a first connector request, wherein the first connector request comprises each of the first portion of the plurality of attributes that lacks an attribute value at the server, and

requesting attribute values for each attribute included in the first connector request, wherein the requesting takes place via the first connector and is directed to the remote data source associated with the first connector;

evaluating, by the server, the user request to determine whether the user is authorized to perform the action on the resource, wherein the evaluation comprises applying the rule considering the values for the plurality of attributes; and

returning an authorization decision."

Claim 1's dependent claims recite features such as repeating the attributes retrieval steps a second time in Claim 2; tracking or logging user requests in Claims 3 and 9; specifying characteristics of the rule evaluation and attributes in Claims 4, 6, 7,

and 8; authenticating a user's identity in Claim 5; triggering an alarm in Claim 10; and specifying that the resources used are physical, information, or online resources in Claim 11. Independent Claim 12 and its dependent claims are computer system claims that parallel Claim 1 and some of its dependent claims. Independent Claim 1 is a method claim and is essentially the same as Claim 21, except Claim 21 omits classifying user attributes found in a database and retrieving the attributes from that data base using a data retrieval connector. And, Claim 21's dependent claims add the same connector language as Claims 1 and 2. These claims are sufficiently similar to allow the Court to analyze a representative claim, in this case Claim 1, and applying that analysis to all of the claims considering any additional limitations recited in the other claims.

### i. Claim 1 Does Not Pass The First Part of the *Mayo* Test.

Claim 1 does not pass the first part of the *Mayo* two part test because it recites an abstract idea. The wording of the claim appears to present a complex method that uses attributes, rules, connectors, classifications, and remote data sources. But, upon closer examination, the gist of the claim involves a user entering a request for access, looking up the rule for access, determining what information is needed to apply the rule, obtaining that information, and then applying the information to the rule to make a decision.

This is an abstract idea. The abstract idea being that people who meet certain requirements are allowed to do certain things. This is like the Axiomatic's example of

making a determination if somebody is old enough to buy an R rated movie ticket. In order to make this determination, one would have 1) to determine the rule, which would be a person must be 17 to purchase an R rated movie ticket; 2) determine what information is needed to make a decision under the rule. which is the age of the person trying to buy a ticket; 3) retrieving the specific information about the person needed to make a determination, which is requesting proof of age; 3) applying that information to the rule, which may be yes the person is allowed to purchase the ticket because his age is 20.

The example of buying an R rated movie ticket is just one example of how this abstract idea currently is and has been applied in society for as long as civilization has existed.

The possibilities run from the simple examples, such as the movie ticket example to very complex authorization procedures. For example, the '836 Patent states that the prior art used access lists to determine authorizations in which if a person is on the list that person is authorized to access the information. But, what the patent does not address is how the decision is made to put a person on the list in the first place. The process to do so, must be the same process described by the '836 Patent claims and the related question is: Is this person authorized have his name on the list? The list administrator must determine particular attributes about the person requesting to be placed on the list and apply those attributes to the established requirements to be on

the list. If the requirements are met, then the person's name is added to the list.

Other examples include being able to legally drive requires a valid driver's license and obtaining access to top secret information requires the appropriate security clearance. These and many other possibilities all involve the abstract process described by Claim 1 of the '836 Patent.

Jericho's attempt to rely on the assertion that this claims solves a problem that is rooted in modern computing and internet technology does not change this analysis. In support of this assertion, Jericho provides a theoretical example that involves the use of the invention in a military defense scenario, in which the system could be used to make quick and efficient decisions regarding a person's authority to access information based on a changing terrorist threat level. Jericho asserts that this example shows that this is not an abstract idea because of the speed and efficiency with which these decisions could be made using the invention.

Even if the system is faster and more efficient than what was done in the past, that fact does not make this not an abstract idea. The idea behind the process remains that same. Also, it is not the invention that makes the system fast and efficient, it is the use of computers systems to implement the abstract idea that make the system fast and efficient. The process describe by Jericho, in its military defense theoretical, could also be carried out without computers and in the end it is no different than determining certain information about a person to determine if that person is authorized to do

something.

Jericho's reliance on *DDR Holdings, LLC v. Hotels.com, L.P.* is also misguided. In *DDR Holdings*, the Federal Circuit held that certain claims directed to the operation of web pages were patentable because the claims were necessarily rooted in computer technology. *DDR Holdings, LLC v. Hotels.com, L.P.*, No. 2013-1505, 2014 U.S. App. LEXIS 22902 (Fed. Cir. 2014). Jericho asserts that the claims of the '836 Patent are likewise valid because they are rooted in computer technology. This is not the case. The claims in *DDR Holdings* were rooted in computer technology because they modified the way that the internet functioned to address a problem that was created by the invention of the internet; because this was a unique situation in which the problem did not exist absent the internet; and because the invention did not merely use routine and conventional internet operations and procedures. *Id.*

This is not the case for the '836 Patent. The problem existed before modern computing and the internet existed and the claimed invention simply uses standard computing and communication equipment and procedures to implement the abstract idea. This situation is much more like those presented in *Alice* and *Ultramercial*, in which computer technology was used to implement an idea, unrelated to the functioning of the computer or the internet, in a faster and more efficient manner. In those cases and in the case at hand, the mere fact that the process was faster and more efficient because it used computers is insufficient to convert an abstract idea into a non abstract idea or

to root the invention in modern computer technology.

### ii. Claim 1 Does Not Pass The Second Part of the *Mayo* Test.

Claim 1 of the '836 Patent also fails the second part of the *Mayo* two part test. Under the second step of this test, the claim must be analyzed for something more than the abstract idea, i.e. it must display an inventive concept beyond the application of the abstract idea. In support of its assertion that the claim presents and inventive concept, Jericho analogizes the claim to those claims presented in *Research Corp. Techs. v. Microsoft Corp.*, 627 F.3d 859 (Fed. Cir.), in which the Federal Circuit held that the claims were valid because they presented functional and palpable applications in the field of computer technology. The claims in *Research Corp*, were directed to the improved output quality of halftone images. *Research Corp. Techs. v. Microsoft Corp.*, 627 F.3d 859, 868 (Fed. Cir. 2010). The invention used a mathematical algorithm and a blue noise mask to do this. *Id.* The process resulted in creating better images in less time. *Id.* Jericho asserts that the '836 claims are likewise patentable because they involve an inventive concept that has many practical applications and represents a large functional improvement over prior methods.

The Court is not persuaded by this argument because there is a significant difference between the claims of the '836 Patent and the invention claimed in *Research Corp*. The invention in *Research Corp* actually modified the way and manner in which a computer operated to produce images. This is an improvement in the functioning of the

computer itself that results in a faster process with a better output. Claim 1 of the '836 Patent does not do this. As already stated, it simple uses standard computing processes to implement an idea unrelated to computer technology. It does not change way a computer functions or the way that the internet operates.

### iii. Passing The Machine or Transformation Test Does Not Save Claim 1.

The Court agrees with Jericho that Claim 1 of the '836 Patent passes the machine or transformation test, but this does not save the claim. While the machine or transformation test is no longer dispositive on the decision of subject matter eligibility, analysis of a claim under the test can assists in guiding a court in a 35 U.S.C. § 101 determination. Under the machine or transformation test, a showing that a claim is tied to particular machine or that the claim transforms a particular article into a different state or thing supports a finding that the claim recites subject matter the is eligible for patent protection. *Bilski*, 561 U.S. at 603.

In the case at hand Jericho asserts that Claim 1 passes this test and Axiomatics asserts that is does not. In support of its argument that the claim passes the machine or transformation test, Jericho argues that the claim is tied to particular machine or apparatus because the claims require computers to operate. Axiomatics, argues that the claim is not tied to a particular machine because it only recites general computing functionality and the process can be performed without a computer.

Even if the claim only recites general computer functionality, these are still

limitations of the claim that must be implemented by an accused infringer. The fact that the process could be done without a computer does not negate the fact that these limitations are contained in the claim language. So, the claim is tied to a particular machine.

But, this does not save the claim. As, pointed out by the court in *DDR Holdings*, after the decision in *Alice*, it is clear that the recitation of generic computer limitations does not make an otherwise ineligible claim patent eligible. *DDR Holdings*, No. 2013-1505, 2014 U.S. App. LEXIS 22902 (Fed. Cir. 2014). Claim 1 of the patent in suit is no different than the claims presented in *Alice*, both recite abstract ideas that were carried out by generic computer functionality; and Claim 1 of the patent in suit is just as invalid as those in *Alice.*

### iv. Claim 1 Is Representative Of All Of The '836 Patent Claims.

The above analysis of Claim 1 of the '836 Patent is applicable to all of the claims of the '836 Patent. The Court has reviewed all of the independent and dependent claims of the '836 Patent and has found no meaningful difference between those claims and Claim 1 of the patent. The other independent claims present the same idea in different formats and the dependent claims do not add any limitations that change this analysis. So, the Court is of the opinion that an individual analysis of each claim of the '836 Patent is not necessary because the outcome of the analysis of the individual claims would be the same as the analysis of Claim 1.

**D. The Claims Of The '836 Patent Are Invalid.**

In conclusion, all of the claims of the '836 Patent are held invalid because they are directed to a purely abstract idea without any inventive concept, which is not subject matter that is eligible for patent protection.

**SO ORDERED.**

Signed May 7th, 2015.

*Ed Kinkeade*

ED KINKEADE
UNITED STATES DISTRICT JUDGE